Thank you, Your Honors. May it please the Court. I want to focus on two aspects of this record that demonstrate the district court prejudged Mr. Covington's sentence. First, the district court's statement at sentencing that it was imposing the statutory maximum before defense counsel even argued. And second, the court's contemporaneous statements that it was making a record for this court and allowing defense counsel to make a record for this court. You make a record to document a decision that's already been made. But first, at sentencing, the district court, and without hearing from defense counsel, the district court specifically said, quote, I am going to upwardly depart and vary to the statutory maximum of 60 months, end quote. That is unequivocal language. But the district court did not leave it at that. The district court accompanied the imposition of sentence with a statement, quote, I am making a record here for the Court of Appeals to review, end quote. And when defense counsel asked to be heard, the district court didn't say, oops, my mistake, let's start over. Rather, the district court said, quote, yeah, go ahead and make your record because you're going to appeal it and they're going to say whether or not I was prudent and careful in going up, end quote. Was prudent and careful in its mind. And it didn't matter to the district court what record defense counsel made. That record was for the benefit of this court, not for the benefit of the district court. You know, the government's citation of the district courts all the time that make decisions and this happens in the motion to eliminate contacts, and we often have district courts that are making decisions or notifying the parties of what the decision is. And even so, we all recognize that district judges reconsider. That's why we have all these motions to reconsider. It's why you make contemporaneous trial objections, even if it's been addressed by a motion to eliminate, because we recognize that, yes, people make decisions, but the nature of being a judge is that you recognize when new information is added that I might is that we are continually making decisions, but we are also continually aware that if you add new information to the mix, that might change the calculus. I understand that, but I think we can't get away from the unequivocal language of the imposition of sentence accompanied by the statements that you can make a record for the court of appeals. He didn't actually impose a sentence before, right? He said that's what he was going to before district judges, and it's often quite helpful when the judge comes out and says, here's where I am, but I'm happy to hear from everybody. I mean, this is a common story in district court world where the court comes out and says, here's where I am, but I'm happy to hear from everybody, and I'll take full consideration of what you say, but rather than start at the beginning, let me tell you where I am so that we've got a good starting point. You're right, Your Honor. And but this case is distinguishable in terms of, say, even at one end of the spectrum, the Gutierrez case cited by the government. In that case, you know, the government, the district realizes he hasn't heard, says, okay, let's start over. Let's scrap that. I'm going to vacate the sentence. I want to hear from the defense. But he could even do something less than that. They already actually imposed the sentence, right? Like, that isn't like a preview of what the sentence is going to be. That's the actual sentence. Yeah. Well, we view Joint Appendix, page 28, as the actual imposition of the sentence, given the accompanying statements. So you think, like all the conditions of supervised release, that they weren't announced with the sentence? They did come eventually. Once, you know, defense counsel had to ask them. Right, because that's when the sentence was announced, right? Not on the page 71. But I do think this case is distinguishable from a case like Engle because of those comments about the record and the past tense the district court is using in terms of having already made up its mind. Another option the district court could have exercised was to say, you know, I'm inclined to give 60 months, but I'm open to arguments that it should be lower. That's a — you know, there were a few different options the district court could have used. He said he was open to arguments, didn't he? He did say, but what ended up happening was, although he said he would consider the defense arguments, he didn't actually consider the heart of the defense arguments when they got to make the record. So it's particularly apparent the district court didn't consider the arguments because the district court didn't even order Mr. Covington not to drink alcohol on supervised release. That — the guidelines recommend that condition. Probation recommended that condition. But the district court did not ever say anything about that condition, not in the transcript, not in the judgment. Alcoholics should not drink alcohol and certainly should not be allowed by a district court judge to drink alcohol for three years on supervised release. You know, this case is also — we can benefit from a government citation to Pitzinger in the 28J letter, actually, of the Fifth Circuit, because in Pitzinger, the Court recognized that an opportunity to allocute is, quote, not meaningful if the Court has already stated in conclusive terms that a particular sentence will be imposed. So, Your Honor, even if you don't believe that that was the actual imposition of the sentence — It's been in allocuted here first, right? I mean, we heard all about alcohol. I mean, that was an issue that had been addressed first. I'm even — I'm even giving them — you know, they want to analogize to allocution cases, and okay, to a certain extent, that's fine. But if we want to look to those cases, let's look to what it actually said. And so it's not meaningful if the district court has already stated in conclusive terms that a particular sentence will be imposed. So even if you want to view the Joint Appendix, page 28, as not the actual imposition of the sentence, it was stated in conclusive terms. And so — And I'm — you know, I'm looking at the language of Rule 32, so I realize the alleged violation here is not allowing defense counsel to speak. But Rule 32 talks about letting the defendant speak. It talks about letting defense counsel speak. It talks about letting the attorney for the government speak. And it talks about letting any victim speak, right? Those are all in Rule 32. And if we say this was okay, then presumably it would have been okay if he did any of these things before letting the defendant speak, before letting government counsel speak, and before letting any victim speak, too, right? Because I don't see there's any textual basis to say the rule is different for letting defense counsel speak. The rule has to be the same for all four of those. That's correct. Yeah, I agree. And, you know, this becomes a fundamentally different case and much more mitigating when you hear both sides of this story. You know, this really could come out differently on remand because, you know, a district court who listens to both sides might reasonably conclude that society would be better protected, right, if Mr. Covington received less than the statutory maximum but more time in intensive residential alcohol rehabilitation as soon as possible. Because a judge could — who listens to both sides could determine that Mr. Covington's alcoholism really does fuel his criminality. And if we can do something about his criminal behavior. Do you think there's any realistic possibility this case would come out differently before this district judge? Well, you know, the remedy is to vacate in remand for resentencing. I also recognize that remand to a different district court judge is an extraordinary remedy. We didn't ask for that in this particular case. We think that this particular district court could be fair if he listens to all sides of the story before making a decision. And I don't think there's any realistic possibility in terms of that particular aspect of the remedy. You know, whether the first statement, which I tend not to think is enough for you, where the district court literally at the time of the plea colloquy seems ready to impose a sentence. I mean, it's hard for me to read this record that this district court had not decided from the instant this case got in front of him what was going to happen, which turns out to be precisely the thing that happened. I absolutely agree. But again, without the benefit, having jumped to the end, to the end, you can't ever really meaningfully go back. But there will be time, right, having intervened in here before this goes back. And I do think that this judge could make a fair decision. So we haven't asked for that particular part of the remedy. You know, alcoholism is a disease. So realistically, I do think Mr. Covington could receive a lesser sentence if he appears before a district court that does not prejudge that sentence before hearing both sides of the story. Can I ask you about the enhancement issue for a second? I mean, do you contest that your client at the time of sentencing had a pending state law charge for common law robbery? No, he did. So why isn't that just ballgame in terms of whether or not the enhancement applies? I mean, there was this whole distracting thing about whether the federal carjacking statute is satisfied, but it seems pretty obvious that there was an underlying state law felony. Right. So but the problem is the district court found a crime the government did not prove. That's the heart of our issue on appeal. And since the government bore the burden to prove the crime, they shouldn't get a second bite of the apple under Parker. But if this Court disagrees with that, it should at least go back for the district court to make a finding in the first instance of a particular crime. Give the defense a chance. Because, again, there's a lot of evidence on this record. You know, he suffered a head injury in the accident he caused, and then he said he couldn't even remember you know, pardon, pardon, what happened. So, you know, that calls into question whether he could even form specific intent to commit any specific intent crime. As I recall, the probation officer mentioned the state law crime, right? It wasn't like the state law crime is coming out of nowhere. Sure. It was it was in the PSR. That's correct. But the focus on that on the enhancement issue, you know, reading the transcript, it looks like that's almost conceded. Maybe maybe I'm wrong with that. Is that do we review that? It really wasn't fleshed out. You know, there wasn't much of an argument there. Is it preserved? Do we look at it at plain error? Well, we've got a finding, I think, of the district court that carjacking was established. And that's what we're attacking on appeal. But really, I, you know, rest on the briefing as to that particular issue, as to issue three. If there are no other questions, I'll see you on rebuttal, if that's OK. Thank you, counsel. Thank you. Happy to hear from you. Welcome to take your mask off. You're not required to, of course. Sometimes I forget to take it off. Good morning. May it please the court. I'm David Bragdon and I represent the United States. I'm happy to start wherever the court wants, but I did want to, with the court's permission, shed a little bit of light on the arraignment statements by the district court judge, because I'm not sure that came out quite fully in the briefing. And in particular, this case was fairly unusual in its procedural posture and just how fast it went. And so from the arrest to the arraignment is less than a month and a half. And, you know, there was a criminal information done, which is actually... Sorry, from the arrest to the arraignment? Sorry. In the Eastern District of North Carolina, we call plea hearings arraignments. And that's very confusing. So I'm like, that's a different problem if it took them a month to arraign him. I'm sorry, I didn't realize we had that problem, too. We, I think, are the only district in the country that does that. And I usually call them plea hearings in my brief, but sometimes I forget. OK, all right. So from the arrest to the plea hearing was less than a month and a half. And it was also done by criminal information without a plea agreement, which I've never seen that being done before. And then even more importantly, it's exceedingly rare to actually have a motion to expedite it and do it all at once. And when the defense made this motion, the specific reason they gave in paragraph four of their motion is because defendant believes it possible that he could serve a sentence in accordance with standard court procedures. And local rule of the district court does allow you to make a motion to expedite in that instance. The idea is if you're likely to serve more prison time before you get to arraignment, then you would actually, then a judge is actually likely to give you under the guidelines. And obviously we want those to go faster. And so this motion was made by the defendant with that representation. And that's the backdrop of the court's comments. So the court is now at the hearing. The motion hasn't been withdrawn. It hasn't been ruled on. And it's saying, this is a five-year sentence, you know, and I recognize I'm reading some into it, but I think what I read into the court's comments is, do you really think it's likely that he would serve his whole sentence before we get to the sentencing? And so that's the background of those comments. And I think it does put the ---- Say that one more time. I think the court did not believe it was likely that it needed to expedite the sentence, because it didn't think it was likely that he was going to serve his whole sentence before they ever got to sentencing in the normal course. But didn't he then grant the motion to expedite? I mean, in a sense, right? I mean, it is ---- I take your point, but if he was really addressing that issue, then why? Because it was expedited, right? Well, the specific request that they made was to have sentencing at the time of arraignment ---- sorry, at the time of the plea. I understand the language now. It took me a minute, but I'm going to ---- That was the specific request. And the court didn't do that, you know. And so it did, you know, grant it in the sense of let's do this fast, but it didn't ---- it's not, let's not do this all at once, you know. And so I think that's the background of those comments. So can I move forward to the plea hearing and ask you a question that builds off my question to your friend on the other side that points out these are all in Rule 32? So I want you to imagine that everything in this case played out exactly the same way, except for two things. First, the district court said what it said before it invited the government to speak. And, two, what the district court said instead was, I'm going to vary way downward and give him time served. And then the government counsel gets up and says, maybe you should let us talk. And the district court said, go ahead, make your record. How do you suppose the government would react if that had happened? Well, Your Honor, I'm in a good position to answer that, because I actually had a similar situation happen to me in district court, in front of this court, actually, several years ago. And we had prepared for sentencing. It was a postal fraud case. The amount of loss was not exceedingly high. It was $100,000. And the court heard from the defendant. It then had a colloquy with defendant and defense counsel. It looked down at the record and then looked up and said, the judgment of the court shall be probation. Goes through, specifically pronounces the judgment, supervised release conditions, and so on. We, the government, then objected because we hadn't had the opportunity to be heard. And I think because we made that specific objection, we didn't just ask for the opportunity. But you objected. You didn't just say, oh, it's cool. We'll assume that that was maybe a tentative thing. You thought that the district court had just violated Rule 32. And to be fair, it was a specific pronouncement. It wasn't this kind of case where the court had said, this is what I'm going to do. The court actually said, this will be the judgment of the court, read out, supervised release conditions, and everything else. And when the court did that and we objected, the court suspended judgment and gave the government the opportunity to be heard. We were heard. We presented our arguments. The court reimposed the same sentence, and we didn't appeal. Because the court, we flagged the issue for the court. It resolved the concern that it had. And the problem was fixed. Do you know, I think this mistake does happen sometimes. And here, I don't even know that it's the case. Wait. So that strikes me as a really important thing you just said. Do you concede this was a mistake? No. I don't. I think it's a mistake if the court actually pronounces judgment. I think in this case, the court did not pronounce judgment. And so I was trying to think about this. And I was thinking, it is not the rule that a judge can't have an opinion about what the sentence is going to be before they come in. For us to have that rule, judges would have to come in unprepared. That would be the only way for that to happen, right? And it's also not the rule that judges aren't allowed to give their opinion to the parties. Because it's often helpful to know where the judge stands. If the judge thinks this is a probation case, we, the government, want to know that. It gives us a chance to specifically address the court where it is and not in some hypothetical state. And here, what you have to acknowledge, yes, I agree with everything you just said is totally fair. It strikes me as totally right. But at the same time, and I'm not saying Fifth Amendment, Fourteenth Amendment. I'm saying due process with a little d and a little p. Notions of due process. I mean, rely on the notion that before we send someone to jail, we give them and their lawyer an opportunity to speak. And that we don't convey that nothing that they say could possibly make a difference. Even if the court, in fact, in its heart is convinced, right, you have to acknowledge that there are sort of serious due process problems with telling a defendant, here's what it's going to be. Oh, wait, I guess I'll listen to anything, what you say. But really, I've already made up my mind. Because I've already just told you that I've made up my mind. And nothing you say is going to persuade me. There are due process problems of a little d, little p, maybe a capital D, capital P with doing that, right? Yes, Your Honor. And I think that this would be a harder case if the court had ended with make your record. But that's not the last thing it said. In this case, and I want to make sure I get this right, it says, following that, I will take into account and deliberate on every one of your arguments. And then following the arguments, the court says, I've listened deliberately to each and every word you've said on your behalf. This is not a script. It's not part of some pre-read. The court is individually telling him, I've listened. And I find none of it convincing. And so I think we take the court's word for that. Yes, he had an opinion. Yes, he gave his opinion early on. But he also specifically says, I'm going to listen. I have an opinion. But I'm going to listen to what you have to say. And I did listen to what you have to say. And so to me, that's Wait, what did the court say ahead of time? I agree that it said after the fact, I have listened. Where did it say, I'm going to listen? So on JA-29, and I'll read the whole exchange so it's clear. And I will take into account and deliberate on every one of your arguments. But this, there's no way that a guideline of 37 months is adequate punishment, given his recidivism and given the fact that he was on a skate. So I'll listen, but it's not going to change my mind about anything. That sounds like what that says to me. I'll listen in the sense that I'll hear you. But by the way, nothing you say is going to change my mind. Well, first of all, let me take a little bit of- Is there anything wrong with that? I mean, I guess maybe I got some rub, right? So if he comes out and says, listen, this is the most serious offense conduct I've ever seen, right? I've read the PSR. I've read everything about you. I've heard, I think at this point he's heard from the defendant. And so he's heard a fair bit of information. Maybe it's not all the information, but he's heard a lot of information. And he's thinking, it seems fairly here, that this offense conduct ought to be carjacking, right, not escape. And so I think the appropriate sentence, if I had the authority to do it, would be 22 years. And so I can imagine lots of mitigating circumstances, but I can't imagine those that would take me from the 22 years, hypothetically, that I think is the appropriate sentence for this offense conduct for someone who's this type of recidivist, who did these sorts of things. And so I can envision lots of things that might mitigate, but I can't envision something that would take me down below 60 months. And I'm capped at 60 months, so that's all I can do. I mean, it seems like to me what's really driving here and what seems to be missing is that this is a sentence that's driven by his belief, this offense conduct deserves more than five years, lot more than five years. And that seems like a not unreasonable position for him to take. And so I guess I don't have a, I'm having a little bit of a hard time understanding why that's even a problem. You seem to think, that's not a problem. Seems like to me, that seems like an eminently reasonable position to take, particularly because he says, listen, that's my view. But I will listen to what you're going to tell me. I'm going to listen, right? But I want everybody to know up front, like I think this deserves a much longer sentence than what is available in this case, right? And that I, as a district judge, feel unfairly constrained by the mandatory minimum, right? And we have district court judges do this the other way all the time, right? Where they say, right out of the gate, this is a ten year mandatory minimum. Like, I would impose much less if I was not constrained by this statutory maximum. You know, I think this is a two year sentence. But, you know, the government has forced me to impose a ten year sentence. And they often do that without hearing from the government. And we don't find any problem with that. The oddity here is the statutory maximum, just like it would be with a statutory minimum. Not that he's sort of made some decision with broad discretion. He lacks the discretion that he wants. I know there's no question in that, but don't you agree? One of my colleagues likes to say, don't you agree? I do agree with that. I do agree with that. And I think this only step that remains is the court does have to listen. And the court did listen.  Yes, he can come in with a very strong opinion that's not likely to be swayed. But he has to listen. And here the court says he was going to listen, did listen, and said he listened. Can I ask you about a part of it? I think that's all fair. Can I ask you about a part of it that I find troubling in the transcript? I confess I don't know exactly what to do with this. What possible rationale is there for the district court's summary refusal to require alcohol treatment? I mean, that, that, I mean, candidly, that just seemed gratuitously nasty for no apparent reason that I could see. Your Honor, I, I wondered about that too. And one of the things I did is I went and looked at the original transcript of the sentencing from 2010 or 2011. And this is my theory. Some of it, you know, what, what I can tell you from the record is in that original transcript, there's similar discussion about the defendant's struggle with alcohol, of his dad being an alcoholic, his mom on substance abuse. The court there imposes substance abuse, recommends substance abuse treatment without even being asked. And so that's something the court does. The court engages in a fairly detailed colloquy with the defendant, asking him questions about his work, his employment, his life, and so on. I think trying to get a measure of who he is. And my assessment is the court really believed this guy was going to get treatment. He, it was going to make a difference. He was going to do this, and he didn't. You know, he's in prison for a lengthy period of time. He doesn't do the treatment. He smuggles alcohol into prison. He, he then, you know, goes out, commits all these crimes, before he's even finished his federal sentence. And, and when the, at the beginning of this sentencing, when the question is, when the defendant's talking about his alcoholism, he says, well, I didn't get treatment the first time. And he said, well, who's to blame for that? And so the court clearly thinks that, that the defendant is at fault for not taking advantage of these opportunities the first time. And he then decides not to give him, not to recommend those opportunities. Now, BOP can still make them available, but he decides he's not going to make those recommendations. I, and, and my inference from all that is, is that he no longer believed the defendant was a good risk, or a good, you know, good beneficiary of these limited resources based on his past conduct. I I can speak about the other issues. But if the court doesn't have any other questions, then I'll ask Sue Furman. Thank, thank you, counsel. You've got some time. We're happy to hear from you. Thank you, your honor. Counsel, could I ask you to address the forfeiture issue? Because that had troubled me a little bit, and I was prompted by your colleague on the other side saying it. Why isn't this forfeited? Why wasn't it defense counsel's obligation to stand up and say, your honor, I believe to the extent the court has just imposed sentence that you violated Rule 32, and to alert the court to the error. I don't see anything in the transcript that suggests defense counsel did that. For, for two reasons, your honor. First, after the district court imposed what we say imposed the sentence on joint appendix page 28 without hearing defense argument, defense counsel asked to be heard. That in of itself, right, alerted the district court to the constitutional and procedural problems with imposing a sentence without hearing from defense counsel. As your honor pointed out. I'm not sure that, right. Due process is. Do you mind? Oh, I'm sorry. I forgot. No, no. I know. It's just, it's just a little hard to hear you. Yeah. Yeah. If you hadn't taken it off before, I wouldn't have asked you to have done it. But. Due process. Why, why, why is that? I mean, because you could imagine the, the, the says, listen, your honor, you, you have violated the rules and arguably my client's constitutional rights by effectively imposing the sentence without having heard from me, right? That, that's obviously like the, I don't want to say the gold standard, but that'd be a great objection. But why is it judge, I want to be heard is suffices. Suffices to say that you've already done something wrong. Right? Not that I'd like to be heard going forward, but that you've already done something that was a problem. Welcome to my world of wishing. But, but here, but here's the thing, right? Two things. One is due process is grounded in two things. Yeah. These words are pounded in my head from my civ pro teacher, Adrian Fox, 20 years ago. Notice and an opportunity to be heard, right? So opportunity to be heard, due process. That's what you think. And the, the district court also responded by acknowledging there was going to be an appeal, right? You're going to appeal this. So I, I think for those reasons that, that would preserve it, but also under. What he says there, I mean, he's going to appeal it on lots of things, right? Like not that he's going to appeal it on this issue, right? He's going to appeal the 60 months, right? I mean, because we, we have lots of case law about appealing sentences. I mean, most, most people now appeal them, right? And he said you, they're going to say whether I was prudent and reasonable in going up. Prudent and reasonable in going up, not prudent and reasonable in imposing sentence before you object, before you could speak. And there is another ground that, that preserves this claim, and that's under this Court's precedent in Lynn. A request for a lower sentence preserves procedural sentencing error on appeal. And this Court, you know, the particular error in Lynn was a failure of explanation of the sentence. But the Court in Lynn did not limit its holding to that particular kind of procedural error in Lynn or in any of the cases following Lynn. And if you think about this, imposing a sentence without even listening to a defendant's arguments constitutes a failure to consider and address those arguments, which is quintessential error under Lynn, Blue. Can you, can you help me understand what, what the defense counsel argues that was not in the PSR and the defendant's colloquy? Like, what, what's the, help me understand, what, what does the defense lawyer add? Right. There is a defense lawyer. I mean, at some level, the defense lawyer, I think you would agree, the defense lawyer is additive in, in many respects to the PSR information and the defendant's colloquy. And what I'm trying to get at is what do you think is important about the addition? Here's the distinction. Because a judge could reasonably find that being drunk during a crime is absolutely not mitigating. But being a lifelong severe alcoholic that you inherited from your parents, that is mitigating, right? And that's the difference between the two. But in the PSA, but in the PSA, goodness gracious, the PSR includes discussion about his alcoholism? It doesn't just say he had been drinking, right? I mean, it, it raises, as does the defendant in his colloquy, alcoholism as, as a group. So what I'm trying to get at is what do you think the defense lawyer added to what had come before? Now, this is a, this is a practical question. It's not really relevant to the Rule 32 strict analysis. But when we think about whether this, this error mattered in any way, what did the defense lawyer add that didn't, wasn't known to the district judge before the defense lawyer spoke? Yes, Your Honor. I'm out of time. Please. Okay. Please. Okay. Thank you. Two points. One, a pre-sentence report is no substitute for the arguments of an advocate. Okay. I understand that. What I'm trying to get at is what was added? Right. Sure. The, the, the, what was added was the history and characteristics of Mr. Covington. Not that he was drunk during the crime, but that both of his parents had addiction issues. Was there anything? Okay. Let me just ask it more specifically. Yeah. One more time and then, and then you can choose not to answer. It's totally fine. But what specifically was added that wasn't in the PSR? Like what facts or argument or inference was added? Right? Because history and characteristics of the defendant were discussed in both. I'm looking for like what was actually added by the defense lawyer that wasn't already known? Right. Well, but it's the, it's the advocate's argument that is meant to persuade the district court. Right? So he, he says he's drinking profusely by age 16. We have to put this in context, right? His parents failed to even send him to school except for one year. He, his entire criminal history was directly related to his alcoholism. That was an argument that's not right. It's not in the PSR. That's the government. That's the defense argument. Look, there's a root cause here that we could solve by getting him treatment. Was there, was there, was there evidence of that, that all of his crimes related to alcohol? Or was that just the defense lawyer's like conclusion? There is. I mean, when you look. Where is that evidence? When you look back. In the PSR, right? Right. But you, but you have to put this together from, from an advocate's standpoint. And again, another argument in there is, is from the advocate saying a sentence of 30 to 37 months will give enough time for the substance abuse treatment that he needs. Right? That's another argument that it has to be an advocate that makes that argument to make it mean anything to the decision maker. I appreciate your time. Thank you. Thank you, counsel.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Toby J. Heytens